UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
JEANETTE PARRA,                                            :
             Plaintiff,                              :
                                         :
v.                                                         :
                                         :      **OPINION AND ORDER**
CITY OF WHITE PLAINS; LIEUTENANT            :
LARRY JOHNSON, individually; SERGEANT       :      13 CV 5544 (VB)
JOSEPH CASTELLI, individually; SERGEANT      :
HOWARD TRIBBLE, individually; POLICE         :
CHIEF JAMES BRADLEY, individually,          :
             Defendants.                             :
--------------------------------------------------------------x

Briccetti, J.:

       Plaintiff Jeanette Parra brings this action against the City of White Plains (the "City") and several members of its police department, alleging defendants subjected her to a hostile work environment because of her sex and retaliated against her when she complained, in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e et seq. ("Title VII") and the New York Human Rights Law, N.Y. Exec. L. § 290 et seq. ("NYSHRL").

       Before the Court is defendants' motion for summary judgment.  (Doc. #72).

       For the following reasons, defendants' motion is GRANTED in part and DENIED in part.

       The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and § 1367(a).

## BACKGROUND

I.    Factual Background

       The parties have submitted briefs, statements of facts pursuant to Local Civil Rule 56.1, and declarations with exhibits, reflecting the following factual background.

Plaintiff has been a police officer in the White Plains Police Department since 2005.  At various times throughout her employment, including on October 19, 2011 (the record is unclear as to other dates), plaintiff was assigned to units in which her chain-of-command supervisors included defendants Lt. Johnson and Sgt. Tribble.

This case arises out of plaintiff's allegations that Johnson and Tribble, both of whom are male, subjected her to sexual harassment while she was under their command.

Notably, Johnson, Tribble, and defendant Cpt. Castelli[1] never had the authority to hire, fire, or demote plaintiff, or give her a raise, although plaintiff contends Johnson had the ability to change her work schedule, and all three could recommend she be disciplined, of which Johnson's recommendations "would likely be approved."  (Plaintiff's Opposition to Defendants' Rule 56.1 Statement of Facts ¶ 140 ("Pl.'s 56.1 Opp.")).

A.      Sgt. Tribble's Alleged Harassment

On several occasions in late 2006 or early 2007, plaintiff claims Tribble grabbed her by the neck and arm and swung her around.  On one such occasion, Officer Orellana and Lt. Knox, who are not parties here, were present.  When Officer Orellana saw Tribble grab plaintiff, he remarked "whoa, he shouldn't be touching you like that."  (Plaintiff's Counter-Statement of Facts ¶ 13 ("Pl.'s 56.1 Counter-Statement")[2]).  Knox remarked to plaintiff that he "thought [Tribble and plaintiff] had something going on from the way he was touching you."  (Pl.'s 56.1 Counter-Statement ¶ 14).  It is unclear from the record whether Knox's remark, that he thought

---

[1]      Defendant Castelli is named in the complaint as "Sergeant Castelli" but the briefing for the present motion refers to him as "Captain Castelli."

[2]      Plaintiff submits in one document both an opposition to defendants' 56.1 statement, with paragraph numbers corresponding to defendant's 56.1 statement, and a counter-statement of facts, which begins at its own paragraph 1.  (Doc. #78).  The Court refers to each separately.

Tribble and plaintiff "had something going on," was made as Tribble was grabbing plaintiff or during a subsequent conversation between Knox and plaintiff.

Then, in May 2007, while plaintiff and Tribble were in Lt. Knox's office, plaintiff claims Tribble grabbed her by the neck, removed one of her shoes, and threw it out the door of the office and across the booking area.

Plaintiff orally made a complaint about Sgt. Tribble to Lt. Knox after the shoe incident, also in May 2007.

Tribble has not harassed plaintiff since she orally complained in May 2007.

Plaintiff contends her complaint against Tribble was never investigated. Tribble was not disciplined.

     B.     <u>Transfer from Squad 4 to Squad 8 and Other Alleged Retaliation</u>

Plaintiff contends defendants retaliated against her for orally complaining about Tribble in May 2007, by taking the following actions:

- In July 2009, plaintiff's application to be transferred to the Neighborhood Conditions Unit was denied;
- On October 19, 2011, plaintiff was transferred from Squad 4 to Squad 8, in which Johnson and Tribble were both supervisors;
- On December 31, 2011, plaintiff was assigned to walk a foot post on New Year's Eve;
- In January 2012, Tribble asked plaintiff to prepare a memorandum regarding an electronic system for keeping track of traffic tickets;
- On March 11, 2012, Tribble asked plaintiff about radar training.

Both Squad 4 and Squad 8 are midnight patrol squads, for which officers are paid a higher salary. In October 2011, Sgt. Fottrell—not a party here—was made a supervisor in Squad 4. Plaintiff, who was working in Squad 4, had filed a complaint against Sgt. Fottrell in April 2011, alleging he had physically intimidated her while reprimanding her for disobeying his direct orders. This complaint did not allege sexual harassment.

According to plaintiff, Cpt. Castelli called plaintiff on the phone and explained she was being transferred from Squad 4 to Squad 8 so that she would not be supervised by Fottrell. Castelli also told plaintiff that Johnson and Tribble were among the supervisors in Squad 8. Plaintiff told Castelli about her 2007 complaint against Tribble.  Castelli told plaintiff he was unaware of her complaint, but would look at her personnel file, speak with Chief Bradley, and call her back.

Also according to plaintiff, about 15 or 20 minutes later, Castelli called plaintiff again. Castelli told plaintiff he had seen the complaint against Tribble in her personnel file and had spoken with Chief Bradley, and that Bradley had said plaintiff would be fine in Tribble's squad because enough time had passed and "those were just jokes."  (Parra Dep. at 170).  Plaintiff responded that Tribble's actions were not jokes, and asked if she could stay in Squad 4.  Castelli said she could not, because of Sgt. Fottrell, and that her only other option was to be moved to a day shift, where she would lose her higher salary for working at night.

Plaintiff opted not to move to a day shift, and was transferred to Squad 8.

On December 22, 2011, at plaintiff's request, Cpt. Castelli held a meeting with plaintiff, Lt. Parlow, and Lt. Knox, who walked in toward the end of the meeting.  In the meeting, plaintiff indicated she was uncomfortable approaching Tribble for supervisory guidance because of his past history of harassing her.  Plaintiff also indicated she was uncomfortable approaching Johnson for guidance.  Plaintiff claims Castelli responded to her comments about Tribble by calling her a "complainer."  (Pl.'s 56.1 Opp. ¶ 68).

C.    Lt. Johnson's Alleged Harassment

Plaintiff also claims Johnson made frequent, unwanted sexual comments to her, including asking her to perform sexual acts on him.  Plaintiff contends this started shortly after she met

Johnson in 2005, and occurred whenever she saw him, including after she was transferred into Squad 8 under his supervision on October 19, 2011.

Plaintiff filed only one complaint against Johnson: a written complaint on January 9, 2012.  Plaintiff admits Johnson has not sexually harassed her since she filed the complaint.

Plaintiff points to two complaints against Johnson made by other officers as evidence the police department was aware of Johnson's history of alleged sexual harassment.

First, in August 2002, a male police officer complained he was uncomfortable seeing Johnson get his neck and shoulders massaged by a female officer.  The captain who investigated the complaint and filed a memorandum about the investigation spoke to Johnson about "decorum and maintaining professionalism," after which Johnson "agreed that there would be no personal physical contact."  (Pl.'s 56.1 Counter-Statement ¶ 5).  No further action was taken.

Second, on March 30, 2009, a female officer met with Castelli to request that she be moved to a different squad because Johnson, then her supervisor, made frequent sexual comments to her.  The female officer also asked Castelli to have someone talk to Johnson about his behavior.  Castelli granted both requests.  Defendant Chief Bradley met with Johnson on April 2, 2009, to discuss the female officer's allegations.  Johnson denied harassing the female officer, and supposed she was merely upset about verbal reprimands Johnson had given her, but said he understood his responsibility to ensure a safe working environment, and would be more careful about his jokes and comments.  Bradley filed an internal memorandum about the incident and his discussion with Johnson, dated April 16, 2009.  No further action was taken.

II.    Procedural History

The Court previously granted defendants' motion to dismiss all claims except plaintiff's gender-based hostile work environment and retaliation claims under (i) Title VII against the

City; (ii) the NYSHRL for direct liability against the City, Castelli and Bradley; and (iii) the

NYSHRL for aider-abettor liability against Johnson, Tribble, Castelli, and Bradley.  Parra v. City

of White Plains, 48 F. Supp. 3d 542, 554-55 (S.D.N.Y. 2014).

Defendants have now moved for summary judgment as to all remaining claims.

(Doc. #72).

**DISCUSSION**

I.    Legal Standards

The Court must grant a motion for summary judgment if the pleadings, discovery

materials before the Court, and any affidavits show there is no genuine issue as to any material

fact and it is clear the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law

. . . .  Factual disputes that are irrelevant or unnecessary" are not material and thus cannot

preclude summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a

reasonable jury could return a verdict for the non-moving party.  See id.  The Court "is not to

resolve disputed issues of fact but to assess whether there are any factual issues to be tried."

Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010) (citation omitted).  It is the moving

party's burden to establish the absence of any genuine issue of material fact.  Zalaski v. City of

Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element

of his case on which he has the burden of proof, then summary judgment is appropriate.  Celotex

Corp. v. Catrett, 477 U.S. at 323.  If the non-moving party submits "merely colorable" evidence,

summary judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50.  The

non-moving party "must do more than simply show that there is some metaphysical doubt as to

the material facts, and may not rely on conclusory allegations or unsubstantiated speculation."

Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal quotation marks and

citations omitted).  The mere existence of a scintilla of evidence in support of the non-moving

party's position is likewise insufficient; there must be evidence on which the jury could

reasonably find for him.  Dawson v. Cty. of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws

all permissible factual inferences in favor of the non-moving party.  Dallas Aerospace, Inc.

v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  If there is any evidence from which a

reasonable inference could be drawn in favor of the non-moving party on the issue on which

summary judgment is sought, summary judgment is improper.  See Sec. Ins. Co. of Hartford

v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court need only consider evidence that

would be admissible at trial.  Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736,

746 (2d Cir. 1998).

II.     Title VII Claims Against the City

A.      Hostile Work Environment Claim

Summary judgment is not warranted as to plaintiff's hostile work environment claim.

"[T]o establish a hostile work environment claim under Title VII, a plaintiff must

produce enough evidence to show that the workplace is permeated with discriminatory

intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of

the victim's employment and create an abusive working environment."  Rivera v. Rochester

7

Genesee Reg'l Transp. Auth., 743 F.3d 11, 20 (2d Cir. 2014) (internal quotation marks omitted). The standard has objective and subjective elements: "the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive."  Raspardo v. Carlone, 770 F.3d 97, 114 (2d Cir. 2014).

Because "individuals are not subject to liability under Title VII," a successful Title VII claim requires a specific basis to impute harassment liability to an employer.  Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 221 (2d Cir. 2004).  Thus, under Title VII, an employer's liability for workplace harassment "may depend on the status of the harasser."  Vance v. Ball State Univ., 133 S. Ct. 2434, 2439 (2013).  If the harassing employee is a "supervisor," the employer will be strictly liable for his unlawful conduct unless "(1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) . . . the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided."  Id.  "If the harassing employee is the victim's co-worker," however, "the employer is liable only if it was negligent in controlling working conditions."  Id.

Defendants do not contend Lt. Johnson's actions, if true, did not create a hostile work environment.  Rather, defendants argue (i) Sgt. Tribble's actions should not be considered because they were not sexual in nature; and (ii) Tribble's and Johnson's actions cannot be imputed to the City because they were not plaintiff's supervisors and there is no evidence the City was negligent in controlling working conditions.

1.    Tribble's Actions

Defendants argue Tribble's alleged actions do not support plaintiff's claim because, although violent, no reasonable employee could find they were sexual in nature.

The Court disagrees.

Plaintiff claims that, on several occasions, Tribble grabbed her by the neck and arm and flung her around.  Admittedly, this description does not, by itself, capture the alleged sexual nature of Tribble's physical contact with plaintiff.  Nevertheless, Officer Orellana's comment, "whoa, he shouldn't be touching you like that" (Pl.'s 56.1 Counter-Statement ¶ 13 (emphasis added)), and Lt. Knox's comment that he "thought [Tribble and plaintiff] had something going on from the way he was touching [her]" (Id. ¶ 14) are evidence that the touching objectively looked sexual.[3]

Thus, Tribble's alleged actions are part of the hostile work environment claim.[4]

2.    Supervisory Liability

Tribble and Johnson are plaintiff's co-workers, not her supervisors, for the purposes of a Title VII hostile work environment claim.

---

[3]    Defendant is incorrect that these two statements are inadmissible hearsay.  Orellana's statement was made while he watched Tribble touching plaintiff, so it is excepted from the hearsay rule as a present sense impression.  Fed. R. Evid. 803(1).  Although it is unclear when Lt. Knox made his comment, if he said it while Tribble was touching plaintiff, it, too, was a present sense impression.  See id.  If Knox made this comment later, it was a statement by an opposing party's employee within the scope of his employment.  As plaintiff's supervisor, Knox was responsible for addressing conflicts between employees; indeed, plaintiff ultimately made her oral complaint against Tribble to Knox.  Thus, Knox's comment about his perception of Tribble's actions would be within the scope of his employment.  See Fed. R. Evid. 801(d)(2)(D).

[4]    In their reply brief, defendants also argue Tribble's actions should not be considered as part of plaintiff's claim because they occurred outside the 300-day window before plaintiff complained to the EEOC, and are too different from Johnson's alleged harassment to constitute a single actionable hostile work environment.  (Defs.' Reply Br. at 6 n.2 (citing McGullam v. Cedar Graphics, Inc., 609 F.3d 70, 77-78 (2d Cir. 2010)).  The Court disagrees.  Tribble's alleged harassment, from 2006 and 2007, overlapped with Johnson's alleged harassment, from 2005 to 2011, and the two defendants supervised plaintiff at the same time in the same place.  Thus, the alleged incidents are sufficiently related to form a single actionable hostile work environment.

A harassing employee is a supervisor if "the employer has empowered that employee to take tangible employment actions against the victim, i.e., to effect a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Vance v. Ball State Univ., 133 S. Ct. at 2443 (internal quotation omitted).

Plaintiff concedes Tribble and Johnson could not hire, fire, or demote her, or decide whether to give her a raise. Plaintiff contends only that Johnson was a supervisor because he could influence her employment status by recommending discipline or other actions, and that Bradley and Castelli were likely to rely on Johnson because of his regular interactions with plaintiff and his high rank in the department. (Pl.'s Br. at 5-6). In this sense, plaintiff argues, the police department "effectively delegated" to Johnson the ability to take tangible employment actions against plaintiff. (Id. at 6). Similarly, plaintiff contends Tribble was a supervisor because he could recommend discipline.

The Court is not persuaded.

Plaintiff has made no showing that Bradley, Castelli, or any other supervisor in the police department delegated to Johnson the power to make tangible employment decisions, either formally or by deferring to his recommendations. Plaintiff's unsupported assertion that Johnson could influence her actual supervisors by virtue of his rank and superior knowledge of his employees is insufficient—if this were enough, any trusted employee with the supervisor's ear would also be a supervisor. Nor is recommending discipline a tangible employment action because this, too, would need to be approved by a supervisor. See also Travis v. City of Chicago, 2014 WL 4909060, at *12 (N.D. Ill. Sept. 30, 2014) (employee who merely distributed daily work assignments and recommended discipline is not a supervisor under Title VII).

10

Therefore, to prevail on her Title VII claim, plaintiff must prove the City was negligent in controlling working conditions.  Vance v. Ball State Univ., 133 S. Ct. at 2439.

        3.     City's Negligence

Although it is a close call, plaintiff has submitted sufficient evidence to create a genuine issue of material fact as to whether the City was negligent in controlling working conditions.

A plaintiff may show an employer is negligent in controlling working conditions by, for example, failing to "monitor the workplace . . . respond to complaints . . . [or] provide a system for registering complaints," or "effectively discourag[ing] complaints from being filed." Vance v. Ball State Univ., 133 S. Ct. at 2453.

First, there is some evidence the City failed to respond to harassment complaints.  In particular, plaintiff points to the City's decision not to discipline Johnson after the 2002 and 2009 complaints alleging sexually inappropriate behavior, as well as its determination that plaintiff could be transferred into Squad 8 in November 2011 even though she had previously complained of harassment by Tribble in 2007.

Second, there is some evidence the City discouraged complaints, namely that Castelli allegedly called plaintiff a "complainer" in December 2011 when she reiterated her discomfort approaching Tribble for supervisory guidance, and that Bradley dismissed Tribble's allegedly harassing conduct as "just jokes."

Finally, there is the alleged frequency of Johnson's sexual comments toward plaintiff for over six years.  One of the inferences a fact-finder could draw from the City's ignorance of these comments despite their frequency is that the City failed to monitor workplace harassment.

Therefore, a reasonable fact-finder could conclude the City was negligent in controlling working conditions.  Accordingly, summary judgment is not warranted.

B.    Retaliation Claim

However, summary judgment is warranted as to plaintiff's Title VII retaliation claim.

Title VII's anti-retaliation provision "forbids employer actions that 'discriminate against' an employee (or job applicant) because he has 'opposed' a practice that Title VII forbids." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 59 (2006) (quoting 42 U.S.C. § 2000e-3(a)).  "To establish a prima facie case of retaliation, an employee must show that (1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." Lore v. City of Syracuse, 670 F.3d 127, 157 (2d Cir. 2012).

"Once a prima facie case of retaliation is established, the burden of production shifts to the employer to demonstrate that a legitimate, nondiscriminatory reason existed for its action." Raniola v. Bratton, 243 F.3d 610, 625 (2d Cir. 2001).  If the employer demonstrates a legitimate, non-discriminatory reason, then "[t]he burden shifts . . . back to the plaintiff to establish, through either direct or circumstantial evidence, that the employer's action was, in fact, motivated by discriminatory retaliation."  Id. at 625.  "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action."  Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2528 (2013).

Plaintiff claims she was retaliated against for complaining about Tribble in May 2007. But plaintiff has failed to show a causal connection between this complaint and any of the actions she claims were retaliation.

First, the allegedly retaliatory actions took place between two and five years after plaintiff complained about Tribble.  This is too long to give rise to an inference that the complaint caused the retaliation.  See Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union

Free Sch. Dist., 411 F.3d 306, 314 (2d Cir. 2005) (no inference of causation when the alleged retaliatory action took place over a year after the protected activity).

Second, the only evidence plaintiff uses to show retaliatory intent is that (i) in October 2011, while discussing plaintiff's assignment to Squad 8, Castelli relayed to plaintiff Bradley's remark that Tribble's unwanted touching of plaintiff was "just jokes"; and (ii) in December 2011, again while discussing her assignment to Squad 8, Castelli called plaintiff a "complainer" when she reminded him of her 2007 complaint against Tribble.  (Pl.'s Br. at 11-12).  It is unclear how, if at all, Bradley's comment that Tribble's actions were "just jokes" evinces retaliatory intent.  Moreover, Castelli called plaintiff a "complainer" two months after he and Bradley transferred her to Squad 8, which is the only retaliatory action plaintiff claims Castelli took toward her.  If these comments amount to any evidence of defendants' desire to retaliate against plaintiff, they are, separately or collectively, a mere "scintilla."  Dawson v. Cty. of Westchester, 373 F.3d at 272.  Plaintiff offers no evidence any of the other alleged retaliations were motivated by retaliatory animus.

Finally, defendants have shown a legitimate, non-discriminatory reason for transferring plaintiff from Squad 4 to Squad 8, namely, to separate her from Sgt. Fottrell, against whom she had filed a complaint several months earlier.  Because plaintiff declined to take the pay cut associated with moving to a day shift, Squad 8 was the only place the City could send her. Plaintiff has not offered evidence besides Castelli's and Bradley's comments to show that this non-discriminatory reason was a pretext for retaliation.

Therefore, summary judgment is warranted on the Title VII retaliation claim.

III.    NYSHRL Claims

Substantively, claims under the NYSHRL are evaluated under the same legal standards as are those under Title VII.  Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 107 n.10 (2d Cir. 2011).

However, unlike Title VII, certain individuals may be held liable under the NYSHRL, either directly as employers or indirectly as aider-abettors.  A supervisor—that is, a person with the power to hire and fire plaintiff—may be held liable as an employer if he or she "actually participates in the conduct giving rise to the discrimination."  Feingold v. New York, 366 F.3d 138, 157 (2d Cir. 2004) (internal quotations and alterations omitted).

An employee who does not have any ownership interest and who lacks the power to hire and fire plaintiff may not be held liable directly as an employer.  Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995) (citing Patrowich v. Chem. Bank, 63 N.Y.2d 541, 542 (1984)); Malena v. Victoria's Secret Direct, LLC, 886 F. Supp. 2d 349, 365-66 (S.D.N.Y. 2012).  But such an employee may still be held liable as an aider-abettor under NYSHRL § 296(6) if he "actually participates in the conduct giving rise to a discrimination claim."  Feingold v. New York, 366 F.3d at 158 (internal quotation marks omitted).[5]  "In this regard, the individual defendant, who may have personally committed the discrimination, is not held liable for aiding and abetting his own actions, but instead, is deemed liable for aiding and abetting the primary violation by the employer."  Rojas v. Roman Catholic Diocese of Rochester, 557 F. Supp. 2d 387, 393-94 (W.D.N.Y. 2008).  Thus, the "actually participates in the conduct" standard is the same for supervisor liability and aider-abettor liability.

---

[5]     NYSHRL § 296(6) makes it "an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

14

A.    Hostile Work Environment Claims

First, the Court considers the sufficiency of NYSHRL hostile work environment claims for primary liability against the City, Castelli, and Bradley, and for aider-abettor liability against Castelli, Bradley, Johnson, and Tribble.

1.    The City

Defendants' only argument in favor of summary judgment against the City is that the NYSHRL claim should fail because the Title VII claim fails.

As discussed above, the Title VII claim does not fail.  Therefore, the Court will not grant summary judgment as to the City.[6]

2.    Sgt. Tribble

Plaintiff concedes the NYSHRL hostile work environment claim against Tribble is time-barred.  Therefore, summary judgment is warranted as to Tribble.

3.    Lt. Johnson

For the purposes of this motion, defendants do not dispute Lt. Johnson's alleged behavior would give rise to a hostile work environment.  Rather, defendants argue summary judgment is warranted as to Johnson for the same reasons they argue the Title VII hostile work environment claim fails.  But, as set forth above, the Title VII claim does not fail.

Therefore, the Court will not grant summary judgment as to Johnson.

---

[6]    There is case law within the Southern District of New York, not binding on this Court, holding that, unlike Title VII, liability under the NYSHRL may only be imputed to an employer if the employer has actual knowledge of the discriminatory conduct.  See, e.g., Marchuk v. Faruqi & Faruqi, LLP, 100 F. Supp. 3d 302, 307 (S.D.N.Y. 2015); Ponticelli v. Zurich Am. Ins. Grp., 16 F. Supp. 2d 414, 433 (S.D.N.Y. 1998).  The parties did not brief this issue, and the Court need not decide whether this is the correct standard to apply.

Case 7:13-cv-05544-VB   Document 84   Filed 09/09/16   Page 16 of 17

### 4.    Cpt. Castelli

Plaintiff cannot hold Castelli directly liable as an employer under the NYSHRL because he lacked the ability to hire or fire her.  See Tomka v. Seiler Corp., 66 F.3d at 1317.  Thus, the Court must evaluate whether Castelli aided or abetted the creation of a hostile work environment.

Plaintiff has, however, raised an issue of fact as to whether Castelli actually participated in the conduct giving rise to the hostile work environment as an aider-abettor.  Of the evidence supporting the City's liability for the hostile work environment, see supra Part II.A.3, Castelli (i) was involved in addressing the 2009 complaint against Johnson, including the decision not to pursue discipline; (ii) participated in the decision to transfer plaintiff to Johnson's and Tribble's squad in October 2011; and (iii) called plaintiff a "complainer" in December 2011.

Therefore, summary judgment is warranted as to Castelli for direct liability but not aider-abettor liability.

### 5.    Chief Bradley

Bradley is subject to direct liability as a supervisor under the NYSHRL, or as an aider-abettor, if he actually participated in the conduct giving rise to the hostile work environment.

Plaintiff has raised an issue of fact as to Bradley's actual participation.  Of the evidence supporting the City's liability, see supra Part II.A.3, Bradley (i) was involved in addressing the 2009 complaint against Johnson, including the decision not to pursue discipline; (ii) participated in the decision to transfer plaintiff to Johnson and Tribble's squad in October 2011; and (iii) dismissed Tribble's alleged harassment as "just jokes," also in October 2011.

Therefore, summary judgment is not warranted as to Bradley.

B.    Retaliation Claims Against All Defendants

As discussed above, the Title VII retaliation claim fails because plaintiff has not shown

causation.  Thus, summary judgment is warranted on all NYSHRL retaliation claims as well.[7]

**CONCLUSION**

Defendants' motion for summary judgment is GRANTED as to the Title VII and

NYSHRL retaliation claims, and as to the NYSHRL hostile work environment claims against

Tribble and for direct liability against Castelli.

Defendants' motion is DENIED as to the Title VII hostile work environment claim, and

the NYSHRL hostile work environment claims against the City, Johnson, Bradley, and for aider-

abettor liability against Castelli.

By October 11, 2016, the parties shall submit a joint pretrial order in accordance with the

Court's Individual Practices.

All counsel shall attend a case management conference on October 12, 2016, at 2:15

p.m., at which time the Court will set a trial date and a schedule for pretrial submissions.

The Clerk is directed to terminate Sergeant Howard Tribble as a defendant, and to

terminate the motion.  (Doc. #72).

Dated: September 9, 2016
       White Plains, NY

                                       SO ORDERED:

                                       _____
                                       Vincent L. Briccetti
                                       United States District Judge

---

[7]     Alternatively, defendants invite the Court to decline to exercise supplemental jurisdiction over any NYSHRL claims for which the Court does not grant summary judgment on the merits. Because one of the federal claims is going forward, the Court is without power to do so.  28 U.S.C. § 1367(c).